**Henry HOLLEY**

v.

**Ronald SCHREIBECK and City of Allentown.**

**Civ. A. No. 90–8012.**

United States District Court, E.D. Pennsylvania.

March 1, 1991.

Richard J. Orloski, Allentown, Pa., for plaintiff.

Donald E. Wieand, Jr., Allentown, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This civil rights matter comes before the court on the motion of Henry Holley, the plaintiff, for reconsideration of the court's Order of January 25, 1991 which granted the defendants' motion, under Fed.R.Civ.P. 12(b)(6), and dismissed plaintiff's amended complaint without leave to amend. In so doing, the court expressly noted that no brief had been filed by plaintiff in response to defendants' motion as required by Eastern District of Pennsylvania Local Rule of Civil Procedure 20(c). In addition, the court noted that plaintiff's amended complaint did not make out a federal cause of action.

The procedural history of this case may be outlined as follows. The plaintiff filed a complaint alleging federal civil rights violations under 42 U.S.C. § 1981 on December 20, 1990. Thereafter, on January 8, 1991, defendants filed a motion, under Fed.R. Civ.P. 12(b)(6), to dismiss plaintiff's complaint. On January 18, 1991, plaintiff filed an amended complaint, which eliminated the claim under 42 U.S.C. § 1981, but stated a claim under 42 U.S.C. § 1983, alleging the same basic facts alleged in the original complaint with certain minor changes. Nothing other than an amended complaint was filed. The court granted the defendants' motion to dismiss without leave to amend on January 25, 1991. Plaintiff filed a motion for reconsideration and brief on February 6, 1991 which is presently before the court. Since there were two grounds for the dismissal, we shall treat the procedural ground first.

█ In his motion for reconsideration, plaintiff correctly notes that he was entitled to file an amended complaint as a matter of course under Fed.R.Civ.P. 15(a). *See, e.g., Kelly v. Delaware River Joint Commission,* 187 F.2d 93 (3d Cir.1951). Plaintiff also correctly notes in his motion for reconsideration that plaintiff's amended complaint superseded the original complaint which, thereafter, is treated as non-existent. *Bullen v. De Bretteville,* 239 F.2d 824 (9th Cir.1956), *cert. denied,* 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957). The problem with plaintiff's actions is that, as expressly noted in the court's prior order, no brief was ever filed together with the amended complaint. Local Rule 20(c) provides, as follows:

> Every motion not certified as uncontested shall be accompanied by a brief. A brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion. Unless the parties have agreed upon a different schedule and such agreement is set forth in the motion or unless the court directs otherwise any party opposing the motion *shall serve a brief in opposition together with such answer or other response* as may be appropriate

within 10 days after service of the motion and supporting brief....

*Id.* (emphasis added).

We do not dispute that the amended complaint qualified under this local rule as a "response". Our difficulty was and is with the unexplained failure of plaintiff's counsel to file a brief along with the response. A brief would have been particularly helpful in responding to defendants' arguments because, although plaintiff chose to change the legal characterization of the action in an amended complaint, the underlying facts remained basically the same.

This is not the first case in which this court has had this kind of difficulty with this particular plaintiff's counsel. Plaintiff's counsel is obliged to abide by the court's Local Rules of Civil Procedure, not by the rules as he envisions them. Since counsel did file an amended complaint as a response under Local Rule 20(c), we will not treat the prior motion to dismiss as unopposed or uncontested. We will, however, impose appropriate sanctions on plaintiff's counsel for the failure to file a brief and direct that plaintiff's counsel pay defendants' counsel fees in responding to this motion to reconsider.

█ This brings us to the second ground for our previous dismissal, which was the perceived failure of even the amended complaint to make out a federal cause of action. Fed.R.Civ.P. 12(b)(6) allows a court to dismiss "for failure to state a claim upon which relief can be granted." The criteria which a court must use in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are clear:

> In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir. 1985); *Rogin v. Bensalem Township,* 616 F.2d 680, 685 (3d Cir.1980), *cert. denied,* 450 U.S. 1029 [101 S.Ct. 1737, 68 L.Ed.2d 223] (1981).

*Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987).

The Third Circuit has also stated:

In deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Reasonable factual inferences will be drawn to aid the pleader. *Amalgamated Transit Union v. Byrne*, 568 F.2d 1025, 1031 (3d Cir.1977) (in banc) (Aldisert, J., dissenting); *Knuth v. Erie-Crawford Dairy Cooperative Ass'n*, 395 F.2d 420 (3d Cir.1968).

*D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984).

We do not grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) lightly because a dismissal denies the parties a full trial on the merits. At the same time, we do not see how the basic simple fact situation alleged could become more favorable for plaintiff with in-depth discovery, another amended complaint, or live testimony in court. In short, taking the basic factual allegations as true, the facts are as good for plaintiff as they are going to get, and we shall review these facts under the foregoing legal standards.

Taken at their best, the allegations of plaintiff's amended complaint are that the defendant "occasionally visited some friend [*sic*] who happened to be white females," (Complaint, ¶ 7); and that on one occasion, namely on or about December 30, 1989, the defendant Robert Schreibeck, while on duty as a police officer for the City of Allentown and while acting as a policeman, approached a number of plaintiff's "white female friends" while they were working in commercial establishments in the City of Allentown, and advised these individuals to "stay away from plaintiff because plaintiff was a pimp and/or involved with prostitution activities." (Complaint, ¶ 8). Plaintiff further alleges that defendant did this solely because of the race of the plaintiff and to prevent these females from "engaging in or associating with black plaintiff."

(Complaint, ¶ 9). There are no allegations that anyone was taken into custody or even directly threatened with arrest. Plaintiff claims that he is damaged because "as a direct and proximate result of the defendant Robert Schreibeck's conduct", plaintiff is "alienated, prohibited and inhibited from visiting white female friends at commercial establishments and that they are afraid to association [*sic*] with plaintiff." (Complaint, ¶¶ 11, 12). Plaintiff's claims against the City of Allentown are based upon an alleged failure to discipline and reprimand the officer, as well as a cover-up of his allegedly known racist propensities. (Complaint, ¶¶ 18, 19).

We do not believe that the facts alleged rise to a violation under 42 U.S.C. § 1983, nor do we believe there is a violation of plaintiff's right to equal protection of the law.

In *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the United States Supreme Court upheld a Minnesota state statute requiring local Jaycee chapters to admit women. The court noted only two different sorts of "freedom of association" that are protected by the United States Constitution. One is based upon the First Amendment and includes freedom of speech, as well as the right of assembly and petition for redress. The other is based upon "certain intimate human relationships which must be secured against undue intrusion by the state because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts*, 468 U.S. at 618, 104 S.Ct. at 3249.

In *Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989), the Supreme Court upheld a city ordinance which restricted admission to certain dance halls to patrons between the ages of fourteen and eighteen. The court held that the city ordinance did not violate the patrons' First Amendment rights of free association or equal protection of laws under the United States Constitution. In so holding, the court further explained *Roberts* and stated:

The cases cited in *Roberts* recognized that "freedom of speech" means more

than simply the right to talk and to write. It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or *meeting one's friends at a shopping mall*—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment. We think the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment. Thus this activity qualifies neither as a form of "intimate association" nor as a form of "expressive association" as those terms were described in *Roberts*. Unlike the Court of Appeals, we do not think the Constitution recognizes a generalized right of social association that includes chance encounters in dance halls.

*Stanglin*, 490 U.S. at 25, 109 S.Ct. at 1595 (emphasis added).

In plaintiff's amended complaint, it is alleged that Ronald Schreibeck's comments have prohibited and inhibited plaintiff from visiting white female friends at commercial establishments. This is precisely the type of conduct which the Supreme Court in *Stanglin* held was outside the scope of First Amendment protection. For this reason, we concluded in our prior order that plaintiff's amended complaint failed to make out a viable cause of action for violation of the right of free association.

We note other authority which supports our position. In *Swank v. Smart*, 898 F.2d 1247 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990), the court was faced with the discharge of a police officer which was based in part upon an off-duty motorcycle ride with a seventeen year-old female college student. The court stated that this type of encounter did not implicate First Amendment rights of intimate association:

> The purpose of the free-speech clause and of its judge-made corollary the right of association is to protect the market in ideas, *Abrams v. United States*, 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (1919) (Holmes, J., dissenting), broadly understood as the public expression of ideas, narratives, concepts, imagery, opinions—scientific, political, or aesthetic—to an audience whom the speaker seeks to inform, edify, or entertain. Casual chit-chat between two persons or otherwise confined to a small social group is unrelated, or largely so, to that marketplace, and is not protected. Such conversation is important to its participants but not to the advancement of knowledge, the transformation of taste, political change, cultural expression, and the other objectives, values, and consequences of the speech that is protected by the First Amendment.

898 F.2d at 1250.

In *IDK, Inc. v. County of Clark*, 836 F.2d 1185 (9th Cir.1988), the court upheld a county regulation concerning licensing and control of escort services and their employees. The court found the regulation constitutional on its face and stated that escort service associations were not the type of intimate "family and similar highly personal relationships" protected by the Constitution. *Id.* at 1193. The court went on to note that escort service associations were not protected, as a part of free speech, under the First Amendment.

Mere words standing alone will not support a civil rights action. As our former chief judge noted in *Johnson v. Hackett*, 284 F.Supp. 933, 940 (E.D.Pa.1968):

> The private right to enjoy integrity of reputation (the law of libel and slander) and the public right to tranquility (laws dealing with breach of the peace) are matters of state concern. *Beauharnais v. People of State of Illinois*, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952). Defining and punishing the use in public places of words likely to cause a breach of the peace is a matter "within the domain of state power". *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942). Common law slander by a public official is not within the ambit of civil rights protected under the Constitution. *Hopkins v. Wasson*, 227 F.Supp. 278 (E.D.Tenn.S.D.1962).

Plaintiff's action is nothing more than a defamation suit in disguise and it belongs in the state courts.[1] As a matter of common sense, we do not believe that the alleged result of a single remark such as that allegedly made by the officer in this case rises to a level which requires constitutional protection. Were we to so hold, virtually every public arrest in which the police accuse someone of committing a crime would give rise to a federal civil rights action.

An appropriate order follows.

## ORDER

AND NOW, this 1st day of March, 1991, plaintiff's Motion for Reconsideration filed February 6, 1991 is hereby DENIED. Accordingly, the court's prior Order of January 25, 1991 dismissing plaintiff's amended complaint with prejudice stands. Defense counsel shall file, within eleven (11) days of the date of this Order, an Affidavit setting forth counsel fees and costs expended in the argument of plaintiff's motion for reconsideration. If no exceptions to said Affidavit are filed within eleven (11) days of the filing of the Affidavit, plaintiff's counsel shall pay said counsel fees and costs within twenty (20) days of the filing of said Affidavit.

---

1. We express no opinion on whether or not such a suit in the state court would be barred by a privilege or governmental immunity. *See* 42 Pa. C.S.A. § 8541.